UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Michael Trupei, pro se,  )
R12743-004  )
Corrections Corporation of America  )
P.O. Drawer 30  )
McRae, Georgia 31055  )  Civil Action: 1:07-cv-475(PLF)
  )
        Plaintiff,  )
  )
vs.  )
  )
BUREAU of CUSTOMS and BORDER PROTECTION  )
DEPARTMENT of HOMELAND SECURITY, et al.,  )
  )
        Defendants  )

RECEIVED
JUN 2 5 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MOTION FOR LEAVE TO STAY THESE PROCEEDINGS IN ABEYANCE
UNTIL CONDITION AT THE "CCA" ALLOWS PLAINTIFF TO
RESEARCH AND/OR OBJECT DEFENDANTS' ANSWER OR MOTION TO
DISMISS, PERTAINING TO THE INSTANT MATTER, SWORN

PLAINTIFF, Michael Trupei (Plaintiff) appearing specially and not generally and hereby moves this Honorable Court (Court) for an Order to stay this cause in abeyance until such time to be able to research, object and type the required reply to Defendants' Motion to Dismiss or in Alternative for Summary Judgment, sworn. Plaintiff states to wit:

Statement of Facts:

On March 21st, 2007, the Federal Bureau of Prisons (BOP) has transferred Plaintiff to its contract facility, hereinafter known as Corrections Corporation of America (CCA) at McRae, Georgia under premises that Plaintiff became, once again, a low security[1] federal inmate and thus shall exit the FCC-Coleman Medium Security Prisons at Coleman, Florida into a less secure

---

[1] The CCA operates this facility like a penitentiary, as it allows much less freedom of movement than the BOP at FCC-Coleman Medium Security did or does. As such, the BOP's reasons for the Plaintiff's transfer to a lower security level is a misnomer.

facility.[2] In reality, the BOP transferred the Plaintiff to the CCA because of this and similar other actions which require a minimum lawbooks under Bureau of Prisons (BOP) Policy and under <u>Bounds v. Smith</u>, 430 US 817, 97 S.Ct (1972) teachings, which CCA does not provide, thereby causing actual injury and irreparable harm to Plaintiff.

On the same day of March 21st, 2007, Plaintiff arrived at FCI-Tallahassee, Florida, whereat he stayed until April 11th, 2007. While at FCI-Tallahassee, Plaintiff has sent to the Clerk of this Court a letter, stating change of address. (See <u>exhibit-1</u>, attached hereto). Ever since his arrival at CCA, Plaintiff has been severely limited to its law library and the lawbooks. In that, the CCA does not provide the most essential lawbooks on their premises where the BOP did and does. Specifically, the CCA does not carry "Shepards, American Jurisprudence 2nd Edition (Am Jur 2nd) to name just a few...and as required under the BOP's policy as well as under <u>Bounds, Id.</u>, The CCA asserts that it "does not adhere" to the BOP's policy. (See <u>exhibit-4</u>, attached

---

[2] Because he became a low security inmate, on May 30th, 2003, Plaintiff was transferred accross the street from the medium security at FCC-Coleman to its low security facility prison. While at the latter, Plaintiff filed three (3) civil actions. One against the BOP, see <u>exhibit-2</u>, attached hereto. The second one entailed a DEA suit, see <u>Trupei v.DEA</u>, 2005 U.S. Dist. LEXIS 38735::September 27, 2005 (D.C.D.2005) which Plaintiff won. And the third one was against the FAA, which amounted two (2) suits. One administrative and one judicial. After 8 years, the administrative proceeding Plaintiff won. The judicial action, Plaintiff lost. During the course of the litigation, Plaintiff got into altercation with another inmate. It appears that the embroilment was inspired by the BOP itself, using its "jailhouse rats" to provoke Plaintiff, (see <u>exhibit-3</u>, attached hereto) so that security points would increase, assuring his return to the medium security prison where he can only generate ¼ of the legal output from that what he did at the FCC-Coleman Low Security facility. In doing so, the BOP has in conjunction with the Department of Justice (DOJ) stayed, delayed, impeded, and obstructed Plaintiff's legal effort then as they are still doing to this day.

(continuing on the next page...)

hereto). Also the six (6) "Mickey Mouse" typewriters (Smith Corona WordSmith-250) currently at the law library, from which only three (3) of them are marginally functional, are for all practical purposes grossly inadequate for the need of 1700 inmates. (See <u>exhibit-5</u>, attached hereto).

Furthermore, from April 17th, 2007, to the present, Plaintiff is still sorting out his legal papers, pertaining to this and similar other legal files, as that paper work is contained in seven 16"x15"x20" large carton boxes.

At the inventory of his legal files at CCA, however, an enployee at its intake had snooped into Plaintiff's legal papers, and had mixed or thrown the otherwise his chronologically filed legal documents into a total disarray or mass confusion, thereby created further stay, delay, and obstruction of access to his files, causing prejudice and irreparable harm to the Plaintiff.

On Sunday May 27th, 2007, the CCA began its institutional lockdown. That <u>modus operandi</u>, with exception of couple of days, lasted until June 12th, 2007, depriving Plaintiff of further access to the law library and the courts. As such, Plaintiff was not at liberty to access the law library at all.

---

(...continuing from the previous page)

2   Fifteen Months thereafter, Plaintiff became, once again, a low security inmate. What a joke! This time, however, the BOP did not sent him to its low security prison accross the street, where conditions to exercise his legal duty are very good indeed. Rather the BOP sent Plaintiff to the CCA, where he is being seriously impeded of access to the law library and, of course, the lack of the most essential law books, makes it all the more difficult, if not impossible, to prosecute his ongoing suits in tort, or otherwise against the Federal employees for various Constitutional and statutory violations. It makes sense then, that the BOP together with DOJ had sent Plaintiff to one of their contractual held prisons, where the legal work by the inmates is frowned upon. And the BOP and DOJ knew, or should had known that the access to the CCA's law library and the lack of the essential law books is mediocre at best, thereby hindering Plaintiff's maintenance of his legal matters, currently docketed in various U.S. jurisdictions, hoping to undermine, or lay the groundwork for an entry of default, all in violation of the Constitutional Amendment 1; Civil Rights of Institutionalized Persons, § 7; 42 U.S.C. § 1997(e); 42 U.S.C. § 1983, and also the BOP''s norms together with <u>Bounds,Id.</u>, and more.

Finally, in the evening of June 7th, 2007, Plaintiff was summoned to captain's office to pick up his legal mail. To his surprise, however, that legal mail contained this Court's Order of April 27th, 2007, (DKT.#9) wherein it directed Plaintiff to reply to Defendants' "Motion to Dismiss or for Summary Judgment no later than May 30th, 2007." That legal mail took some forty one (41) days to reach the Plaintiff.

WHEREFORE, Plaintiff respectfully moves and prays that this Court issue an Order to stay this cause in abeyance until such time when Plaintiff will be able, without any interferences by and through the CCA or otherwise, to enter the law library premises equiped with the needed and so required lawbooks, for the purposes to rebutt and/or object to Defendants' Motion to Dismiss and/or in Alternative for Summary Judgment, and for such other and further relief as this Honorable Court deems just, equitable, and proper.

Respectfully submitted,

_____
Michael Trupei, pro se

CERTIFICATE of SERVICE

I, Michael Trupei do hereby certify that this/my Motion has been on June 21st 2007, forwarded via U.S. Mail, first class, as follows:

U.S. DEPARTMENT of JUSTICE
United States Attorney
District of Columbia
Judiciary Center Building
555 4th Street, N.W., Room E4810
Wshington, D.C. 20530

Sworn to and subscribed
before me on this 18, day of

June , 200 7

_____
NOTARY PUBLIC

_____
Michael Trupei, pro se

My Commission Expires: _____

Notary Public, Telfair County, Georgia
My Commission Expires Feb. 13, 2009

-4-

To: Clerk of the Court
    United States of America
    for the District of Columbia
    333 Constitution, Ave.,
    Washington, D.C. 20001

From: Michael Trupei, pro se
    R12743-004
    FCI-Tallahassee
    501 Capitol Circle
    Tallahassee, FL 32301

Re: Notice of Address Change,
    subject to Trupei v. DEA, et al.,

March 23, 2007

Good Morning Clerk:

Notice is hereby given that I am changing my address from FCC-Coleman Medium Security to the "INS" holding facility at McRae, Georgia.

As of this date, I am holed in at FCI-Tallahassee, Florida. I don't know when I will be able to arrive at "McRae" so as to rebut, once again, the already rebutted government's motion for summary judgment in the above referenced subject matter.

As soon as I get there, I will drop you a note, informing you whether they will allow me to continue my legal work further.

Your kind attention in this matter is hereby sincerely appreciated!

Thank you,

_Michael Trupei_
Michael Trupei, pro se

### VERIFICATION

Pursuant to 28 U.S.C. § 1746 of the United States Code I, Michael Trupei do hereby verify or state under penalty of perjury that this/my "Notice of Address Change" is to the best of my knowledge true, correct, certain and complete.

Done on this 25th, day of March, 2007    By: _Michael Trupei_
                                                       Michael Trupei, pro se

EXHIBIT-1

APR 2 6 2007

To: Clerk of the Court
    Eleventh Circuit Court of Appeals
    56 Forsyth Street, N.W.
    Atlanta, Ga 30303

From: MICHAEL Trupei, pro se
      R12743-004
      P.O. Box 30
      McRae, Ga 31055

Att: Jan Seawell

Re: Trupei v. United States of America,
    Case No.: 15005-BB

April 18, 2007

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

APR 2 6 2007

THOMAS K. KAHN
CLERK

Good Morning Jan:

   As I indicated to you in my March 23rd, 2007, change of address-letter that as soon as I arrived at McRae, Georgia and be able to write, I will inform you whether or not I will be able to reply to the government's response pursuant to Trupei v. United States of America, Case No.: 15005-BB, as that is very much so warranted.

   I got here on or about April 11th, 2007, however, as of yet my legal files have not been provided to me, so as to reply to the government's response to same. It seems already, that McRae, a contract facility of the BOP, is showing signs of stay, delay, obstruction, and bad faith by intentionally delaying the production of my legal files, and by lack of "Shepard-Books" and/or its electronic counterparts, thereby effectively denying my access to the courts.

   As already have mentioned in part hereinabove that the law-library does not provide "Shepards." It is also limiting type-writers. It only provides five (5) delapidated, SmithCorona-WordSmith, type-writers available that serve 1600 inmates, and thus the machines are, at any given time very hard to be secured for the purposes of my legal use.

   At the very minimum, there should be at least fifteen (15) type-writers available to the inmates for the purposes of meaningful legal input. The five (5) type-writers currently available thereat are utterly insufficient.

   Wherefore, and as a "civiliter mortus" please stay my case in abeyance until such time to be able to muster an effective and/or affirmative reply to the Government's response. Please acknowledge receipt of this letter.

   Your kind attention and effort in this matter is hereby genuinely appreciated.

                                              Sincerely,

                                              [signature]
                                              Michael Trupei, pro se

Sworn and Subscribed
before me on this 24, day of

April, 2007

[signature]
NOTARY PUBLIC
My Commission Expires: _____

Notary Public, Telfair County, Georgia
My Commission Expires Feb. 13, 2009

EXHIBIT-2

Respondent:

Federal Bureau of Prisons
Southeast Regional Office
3800 Camp Creek Parkway, S.W.,
Suite 2000
Atlanta, GA 30331-6226

Appellant:

Michael Trupei
R12743-004
FCC-Coleman Low Security Prisons
P.O. Box 1031
Coleman, Florida 33521-1031

Re: Regional Appeal                                September 3, 2005

APPEAL from the DHO's DECISION
of AUGUST 17, 2005, VERIFIED

The Appellant, Michael Trupei ("Appellant") hereby appeals to this office from the DHO's decision of August 17, 2005 pursuant to subject matter No.: 136892. In that, he supposedly "admitted" that he "attempted" the physical altercation, which is not true, between the Appellant and the "BOP" and/or "DOJ" sanctioned inmate "provocateur," namely Boyd Quintellis #27660-034 at FCC-Coleman Low Security Prisons at Coleman, Florida to wit:

ARGUMENT

I. In no Material Times Appellant admitted that he Attempted to Hit Boyd-Provocateur First

For at least one month prior to the physical altercation ("altercation") inmate Boyd Quintellis ("Boyd") was the Appellant's cube-mate and had acted as an inmate "provocateur," provoking the Appellant by virtue of nightly slidings of the "Foot-Locker" in and out, from under the bed between 11:00PM and 12:30AM thereby waking him up in hopes for an adverse reaction and/or hostility by and through the Appellant against the Boyd-provocateur.(1)

When Appellant asked Boyd why is he sliding back and forth his foot-locker in the middle of the night from under his bed? His reply was to wit: "What are you going to do about it? If you don't like it, then let's go to the bathroom." This statement was a clear evidence that Boyd was looking for a physical confrontation with the Appellant. However, Appellant, wanted only to discuss the problem quietly, because the nearby inmates were sleeping and didn't wanted to wake them up, thereby he agreed to meet Boyd at the bathroom. Boyd then proceeded thereto, as Appellant had to put his boots on and had thereafter followed Boyd to the bathroom. Where the Appellant once again asked Boyd: "Why do you dragging your foot-locker back and forth in the middle of the night, thereby waking me up?" At that point Boyd took an offensive posture against the Appellant by and through his cocked fists, like a boxer posing for the photo. In so doing, he not only had provoked Appellant for the second time, but also attempted to hit him. As such, Appellant had to defend himself and did likewise the same.

The DHO, however, stated that the Appellant "admitted" attempting to hit Boyd, and as it was already described above, the description is true and correct. Besides, however, Appellant objected to the DHO's statement, but the objection was not acknowledged, nor recorded on BP-S 305--52 Form 6. In fact, it was Boyd who attempted to "hit" the Appellant

---

1 It appears that Boyd is the type of sort who is looking for an easy Rule 35 motion or otherwise his sentence reduction (if any) by and through the provocation against Appellant on behalf of "BOP" and "DOJ" which may, if condition permits recommend to a Court for such a sentence reduction and/or other rewards. This make sense because in the morning after altercation, Boyd proceeded directly to the lieutenant's office and informed the staff about the altercation, which normally in a case like this challengers
(to be continuing on the following page...)

Afterall didn't he raised his hands into a fighting mode when Appellant repeated his question: "Why are you sliding your foot-locker in the middle of the night, waking me up..." Yes, he did raised his hands. He raised them with a clinched fists for the purposes to provoke a fight, and to place Appellant into the SHU, means that he not only attempted to hit Appellant first, but he did hit him first. And that is the fact. Appellant, however, tried to block the swing as he was only trying to defend himself, and that is also the fact.

II.   For the Purposes to Avoid the Confrontation the Appellant had Sought the Unit-Counsellor to Change Appellant's Sleeping Quarters, the Unit-Counsellor, however, was

Nowhere to be Found

Many a time (at least five times) the Appellant has spent time prior to the altercation, seeking the C-3-Unit-Counsellor, Mr. Miro ("Counsellor-Miro") to make sleeping-quarter changes, so as to avoid any possible problems between Appellant and Boyd the provocateur. Each time the Appellant sought Counsellor-Miro's help, he was not on duty station, or otherwise in his office where he should have been.(2) Had the Counsellor been available to the Appellant's needs, more likely than not he would have been moved to a different cube, thereby preventing the altercation. Appellant, however, was unable to find Counsellor-Miro.

(....continuing from the front page)

1) do not "RAT" on each other. And besides the "BOP" in conjunction with "DOJ" have for months covertly planned ("Stille Hilfe") this altercation using Boyd and others as their "provocateurs" for the purposes to place the Appellant into the "Special Housing Unit" (SHU), which they did, thereby disrupting his ongoing "legal challenges" against the United States, as he has already many pending actions in various U.S. Jurisdictions, and more is yet to come which the United States do not wish to defend. What does United States want, is a speedy departure of the Appellant from the United States to Canada, where his pleadings, motions, and suits would have no effect upon the United States's jurisdiction. By provoking the Appellant into this altercation, the BOP through DOJ retaliated against the Appellant for exercising his Constitutional right of due process (under Fifth Amendment) to confront the United States in its Court of competent jurisdiction to dismiss his fraudulent indictment, inter alia, however.

2) For some reason or another, the actual office of Counsellor-Miro has for the past three-months been closed. When Counsellor-Burley, the predecessor to Counsellor-Miro has been assigned to that office, he was always available. Counsellor-Miro, however, is not! Instead he stays at the Unit-Secretary's office (Ms. McRae) supposedly to conduct his duties therefrom. The problem with that setting, he was not there either, or at least so it seems. Had the Counsellor been available to the Appellant's needs, the altercation would have been avoided. Moreover, and what is interesting to note is the fact that Appellant has become aware of a certified-international mail addressed to him, which has legal connotation which Counsellor-Miro has for the past five (5) weeks, from this date, been in possession and had thusfar refused it to deliver to Appellant. By keeping that mail through intentional stay, delay and obstruction from Appellant is actionable by itself under several criminal statutes and is ripe to proceed thereon. This is just one example of "gross" deficient performance of Mr. Miro as Counsellor thereof. He should be replaced with Counsellor-Burley whose stellar performance at C-3-Unit was an example what a conscious Counsellor should be.

III.  For the Purposes of a Fair Hearing, the DHO Failed to Include a White Hearing Officer, Thereby Causing Prejudice and Irreparable Harm to the Appellant

At the hearing, however, the DHO a black woman, namely Mrs. Cladd who despite of the evidence of unintentional altercation of the Appellant, had favored "Boyd" an insider-provocateur, who is also black, and who has unequivocally provoked the Appellant into the fight. For this reason alone, the DHO should also have included a white DHO, as Appellant is white, or at the very least a hispanic person should have been present within the meaning of the team composition, however, they were not. As such, the DHO's findings of August 17, 2005 are not worthy of confidence as they cause the Appellant substantial prejudice and irreparable harm to a fair hearing, and thus her findings should be reversed.

## CONCLUSION

WHEREFORE, premises considered, neither the Appellant "admitted" nor "attempted" to hit Boyd-provocateur first. It was the provocateur who acted on behalf of the "BOP" and "DOJ" to provoke the Appellant into the altercation for the purposes to place the Appellant into the "SHU" so as to disrupt his legal effort against the United States. Furthermore, however, had Counsellor-Miro been available to the Appellant's sought need of changing the sleeping quarters, the altercation would have not taken place. Counsellor-Miro, however, was just simply not at his office when so needed. Therefore, once again, the DHO's findings are null and void ab initio and her decision must be reversed and remanded to a proper racially balanced DHO-Team for further proceedings; and an "Order" to investigate this "BOP" and/or "DOJ" malfeasance, consistent with evidence hereby presented shall also be ordered and do so forthwith.

Sincerely,

*[signature]*
Michael Trupei pro se

## VERIFICATION

Pursuant to 28 U.S.C. § 1746 of the United States Code I, Michael Trupei do hereby verify under peanlty of perjury that this appeal is to the best of my knowledge, true and correct.

Done on: September 3rd, 2005         Signed: *[signature]*
                                              Michael Trupei pro se

Grievance No.:_____                                              Form 14-5A – For Offical Use Only

## CCA INMATE/RESIDENT GRIEVANCE FORM

Name (Print): **Trupei**          **Michael**          **N/A**
                Last Name           First              Middle Initial

Number: **12743-004**          Housing Assignment: **Marshall-Unit-F-Pod-205-Low**

INFORMAL RESOLUTION ATTEMPTED?    Yes ✓          No ____
NAME OF STAFF CONTACTED _____

### STATE GRIEVANCE (Include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary)

I hereby continously object to Ms. Lavely's and Counselor Clay's (Ms. Clay) responses, resulting from my cop-out (see exhibit-1, attached hereto) that the Corrections Corporation of America (CCA) "does not adhere" to the Federal Bureau's of Prisons' (BOP) Policy of maintaining the essential law-books in its law-library, among others, "Shepards, American Jurisprudence Encyclopedia or otherwise Am. Jur 2nd, and Criminal Law Reporter," and the like.     (continuing on the attached sheet of paper)

### Requested Action

Please provide me with herein requested and much need and mandated law-books, and also a copy of the contract between the BOP and CCA contract

Inmate/Resident's Signature: _Michael Trupei_          Date Submitted: _June 5th, 2007_

### GRIEVANCE OFFICER'S REPORT

[overlay text running vertically: "The United States Codes I, Michael Turner Ms. Turner has been forwarded upon Ms. Signed by:"]

### GRIEVANCE OFFICER'S DECISION

Grievance Officer's Signature: _____          Date: _____
Inmate/Resident's Signature (upon receipt): _____          Date: _____

APPEAL: Yes ____   No ____          STATE REASON (S) FOR APPEAL: _____

[overlay text vertically: "Pursuant to 1746 of the United States Codes I, Michael Trupei, pro se R12743-004 Marshall-Unit-F-Pod-205-Low under penalty of perjury, than this envelope has been forwarded upon Ms. Turner designated by the CCA, for the purposes to Signed by: Done on this 5th day of June, 2007"]

### WARDEN/ADMINISTRATOR'S RESPONSE

Warden/Administrator's Signature: _____          Date: _____
Inmate/Resident's Signature (upon receipt): _____          Date: _____

EXHIBIT--4

(continuing from the Form 14-5A)

(see exhibit-1, attached hereto) so required thereunder. For their insubstantial and unsubstantial responses, I am therefore appealing them to this office, to wit:

**Facts:**

I am in a need of a complete set of the "Shepards, American Jurisprudence Encyclopedia (AmJur 2d)" as well as the Criminal Law Reporter publication so required to maintain and/or perfect my pending legal-matter to the Government's response, stemming from my appeal brief in tort currently at the Eleventh Circuit Court of Appeals in Atlanta, Georgia under the premises of Trupei v. United States of America, Case No.: 06-15005-BB (11th Cir.2006); and/or FOIA suits under Trupei v. Bureau of Customs and Border Patrol, et al., Case No.: 07-0475 (HHK); and/or Trupei v. United States Department of the Navy 1:06-cv-978 (PLF)(D.C.2006); and/or Trupei v. United States Department of Justice, Case No.: 2005 U.S. Dist. LEXIS 38735::September 27th, 2005 (D.C.C.2005); and my erstwhile and continuing battle pursuant to Trupei v. United States of America, under 28 U.S.C. § 2255-1651 motion, Case No.: 89-6062-CR-Gonzalez; and not mentioning of numerous administrative FOIA requests and/or appeals as they are presently in the pipeline with a different United States agencies. As such, please provide me with the essential legal-books so needed to maintain the above named causes of action. Said legal materials are required to meet the minimum standard that is otherwise available at any given time at any BOP law-library for the purposes to be so used thereat and shall likewise be so implemented here at CCA.

Further, the cases above cited were generated and filed while I was in BOP's custody in Coleman, Florida. All of the sudden, the BOP decided to transfer me to its Contractual facility or otherwise the CCA here at McRae, Georgia, where the law library is mediocre at best, as it does not have the basic law-books or its electronic or computer counterparts on its premises so needed to advance my ongoing legal endeavour through the Courts.

In Bounds v. Smith, 430 US 817, 97 S.Ct (1972) the Supreme Court has firmly established prisoners' constitutional right of access to the courts, where the High Court held that: "The importance of this right cannot be overstated. It is the right upon which all other rights depend...to discharge their duty of assuring prisoners' rights of meaningful access to the courts. States **must** provide prisoners' adequate law-libraries or adequate assistance from persons trained in law. To determine the constitutional adequacy for a legal process program, district courts must evaluate the program as a whole, "emphasizing that meaningful access to the courts is the touch stone." Bounds Id.

In the instant case the CCA does not provide adequate law-library nor adequate assistance of legal program so required under First Amendment (Const. Amend. 1, 1791) and which the BOP has for the past 18 years continuously given, makes Ms. Lavely's and Ms. Clay's response all the more utterly absurd thereby depriving me of due process by and through the denial of meaningful acces to the courts, which benefits the government and the CCA, while discriminates myself. Thus, please institute the mandated and above all a very much needed the hereinabove named law-books, inter alia, so as to conduct my continuing and meaningful legal input and output, necessary to maintain the

(continuing on the next page...)

(...continuing from the previous page.)

above said cases. And please provide also with a copy of the pertinent section of the contractual agreement between the BOP and CCA, relating to the law-library's premises, such as the number of typewriters and business machines and, of course, the required lawbooks which must be in the CCA's law library on any given time, and please do so forthwith.

    I trust this suffices to my overall request!

cc. To. Ms. Turner, a BOP's representatives
    here at CCA.

Sincerely,

*[signature]*
Michael Trupei, pro se

## VERIFICATION

    Pursuant to 28 U.S.C. § 1746 of the United States Code I, Michael Trupei do hereby verify, or state, under penalty of perjury that this/my 14-5A request is to the best of my knowledge true, correct, certain, and complete.

Done on this _2nd_ day of June, 2007   Signed by: *[signature]*
                                                                Michael Trupei, pro se

# CORRECTIONS CORPORATION OF AMERICA
# McRAE CORRECTIONAL FACILITY

## GRIEVANCE INFORMAL RESOLUTION FORM

**NOTICE TO INMATE/DETAINEE:** You are advised that prior to receiving, and filing a CCA Inmate/Detainee Grievance Form (14-5A), or BOP Regional Administrative Remedy Appeal Form (BP-10), you **MUST** first attempt to informally resolve your complaint through your Unit Counselor. Briefly state the complaint below and list what efforts you have made to resolve your complaint informally. Be advised that this form must be completed promptly. The CCA Inmate/Detainee Grievance Form must be submitted within 7 days from the time you become aware of the incident. The Informal Resolution Form must be processed prior to submission of your CCA Inmate/Detainee Grievance Form. The BOP Administrative Remedy Appeal Form must be submitted within 20 days following the date on which the basis for the request occurred.

Inmate/Detainee Name: __Michael Trupei__   Number: __12743-004__   Unit: __11-Bn205__

Informal Resolution Form issued by Unit Counselor: _____(Name)_____   Date: __5-18-07__

**INMATE/DETAINEE COMMENTS:** (Inmate/Detainee MUST FILL OUT items 1,2,3 and signature block)

1) Complaint:
I respectfully disagree and/or once again object to Ms. Carol Lavely's reasoning to my cop-out that McRae Correctional Facility (McRae) does not require to carry the essential law-materials so required under BOP's norms. (See exhibit-A, attached hereto)

2) Efforts made by Inmate/Detainee to informally resolve:
Via a cop-out, (see exhibit-A, attached hereto) I informed Ms. Fish about my concerns that McRae's law-library is lacking the essential law-books, inter alia, "shepards" kind, and who forwarded said cop-out upon Ms. Carol Lavely. Ms. Lavely, however, responded by and through her reasoning that McRae facility is not bound by the BOP's policy to carry the minimum required law-materials. In doing so, she essentially is thwarting my legal input or otherwise a meaningful access to the courts.

3) Names of staff Inmate/Detainee contacted:
Ms. Fish was the erstwhile recipient of the above named and hereby exhibited cop-out, and thereafter the request was forwarded upon Ms. Carol Lavely for further consideration. In sum, both Ms. Fish and Ms. Lavely are named in the cop-out.

Date Returned to Counselor: __May 22nd 2007__   __Michael Trupei__   __12743-004__
                                                Inmate/Detainee Signature   Register Number

**UNIT COUNSELOR'S COMMENTS:**

1) Efforts made to informally resolve and staff contacted:
As Ms. Lavely responded on the Request to staff dated 5-10-07 McRae Correctional Facility does not adhere to the BOP policy on what is contained in the law library. The "Shepards" was not included by CCA legal counsel in McRae facility law library. If you are not satisfied with this answer please come by my office and receive a 14-5A to continue the grievance process.

Date informally resolved: __5-22-07__   Signatures: _____   _____
                                                   Unit Counselor   Unit Manager

Date **Form BP-10 or 14-5A** Issued: __5-23-07__
     (CIRCLE ONE)

602503-2174

EXHIBIT-1

# CCA/McRAE CORRECTIONAL FACILITY
## INMATE REQUEST TO STAFF FORM

| TO: (Name & Title of Staff Member) Ms. Fish, Case Manager at Marshall-Unit | DATE: April 25th, 2007 |
|---|---|
| FROM: Michael Trupei | REGISTER NUMBER: 12743-004 |
| WORK ASSIGNMENT: Unit-Orderly | UNIT: Marshall |

**SUBJECT:** Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Good Morning Ms. Fish:

This is to advise that I cannot find the required "Shepard-Law-Books", inter alia, at this institutional law-library. I have conversed with able Ms. Nieves, about the lack of the "law-books", whose response was that the law-library, to her knowledge, carries the essential law-materials. Nevertheless, however, I have five (5) cases to maintain all in connection with my erstwhile matter 99-6062-CR-Gonzales. These suits and motions thereof have been filed nine (9) years ago at FCC-Coleman, Florida where its law-library has those essential required books so needed to maintain my legal endavour. To my surprise, however, this institution does not carry the minimum mandated law-books so required under BOP policy. Please provide me with the entire set of "Shepards" so that I may maintain my on-going actions and motions to dismiss my fraudulent conviction and/or underlying indictment.

I trust this suffices to my request.

Thank you,

/s/ Michael Trupei

**(DO NOT WRITE BELOW THIS LINE)**

**DISPOSTION:** This inmate request to staff was forwarded to my for a response. McRae Correctional Facility does not adhere to the BOP policy on the issue of what is contained in the Law Library. Our Legal Counsel does not include Shepard in the McRae facility Law Library.

| Signature Staff Member | Date 5/ /07 |
|---|---|

Record Copy - File     Copy - Inmate     Copy - Other

602503-3302

EXHIBIT-A

# CCA/McRAE CORRECTIONAL FACILITY
# INMATE REQUEST TO STAFF FORM

| TO: (Name & Title of Staff Member) | DATE: |
|---|---|
| FROM: | REGISTER NUMBER: |
| WORK ASSIGNMENT: | UNIT: M06-205 L |

**SUBJECT:** Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Good Morning Ms. Nieves:

It came to my attention that this Law-Library is lacking sufficient numbers of type-writers. It only provides four (4) of them, and those four machines are also, at best, mediocre, for the purpose to do a meaningful legal input.

Because of my five (5) imminent federal cases, I need a Law-Library that will otherwise provide me a functional and available type-writers at all the time so that I shall continue and maintain said legal matters, already and filed, in their respective jurisdictions.

As soon as the "LED" releases all legal issues, I will surely come with the evidence of our request the due diligent attention to me to be the ongoing legal-work.

Your kind attention and efforts in this matter is, indeed, genuinely appreciated.

**(DO NOT WRITE BELOW THIS LINE)**

**DISPOSTION:**

EXHIBIT-5

| Signature Staff Member | Date 4/24/06 |
|---|---|

Record Copy - File   Copy - Inmate   Copy - Other

602503-3302